UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

DEC 1 4 2015

JUDGE JOHN Z. LEE
UNITED STATES DISTRICT COURT

UNITED STATES OF AMERICA

v.

HASAN R. EDMONDS

No. 15 CR 149

Judge John Z. Lee

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant HASAN R. EDMONDS, and his attorney, PAUL FLYNN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2.     The superseding information in this case charges defendant with conspiring to provide material support to a foreign terrorist organization, specifically the Islamic State of Iraq and the Levant, in violation of Title 18, United States Code, Section 2339B(a)(1) (Count One); and attempting to provide material support to a foreign terrorist organization, specifically the Islamic State of Iraq and the Levant, in violation of Title 18, United States Code, Section 2339B(a)(1) (Count Two).

3. Defendant has read the charges against him contained in the superseding information, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the superseding information: Count One, which charges defendant with conspiring to provide material support to a foreign terrorist organization, specifically the Islamic State of Iraq and the Levant, in violation of Title 18, United States Code, Section 2339B(a)(1); and Count Two, which charges defendant with attempting to provide material support to a foreign terrorist organization, specifically the Islamic State of Iraq and the Levant, in violation of Title 18, United States Code, Section 2339B(a)(1).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Two of the superseding information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt and relevant conduct beyond a reasonable doubt:

      a. With respect to Count One of the superseding information:

Beginning no later than in or about December 2014, and continuing until at least on or about March 25, 2015, at Aurora, in the Northern District of Illinois, and elsewhere, defendant and co-defendant Jonas Edmonds knowingly conspired with each other to provide material support and resources, namely, personnel, to a foreign terrorist organization, namely, the Islamic State of Iraq and the Levant, commonly referred to as ISIL, ISIS, or the Islamic State, knowing that it was a designated foreign terrorist organization and that the organization had engaged and was engaging in terrorist activity and terrorism.

More specifically, beginning on or about January 19, 2015, and continuing thereafter, defendant, a member of the Army National Guard of Illinois assigned to a National Guard unit in the Northern District of Illinois, engaged in online communications with UC1, a person whom defendant believed was an ISIL fighter in Libya but who was in fact an FBI employee. In those communications, defendant expressed his support for ISIL and his desire to travel to the Middle East with his cousin, Jonas Edmonds, to fight for ISIL. Defendant also gave UC1 advice on how to fight and defeat the U.S. military and stated that he and Jonas Edmonds were willing to conduct an attack in the United States if ordered to do so.

On February 6, 2015, Jonas Edmonds contacted UC1 online and said that he was planning to travel with his family to Mosul, an area of Iraq

controlled by ISIL. Jonas Edmonds also told UC1 that if he was unable to travel, he intended to commit an attack within the United States in support of ISIL. Over the next month, Jonas Edmonds asked UC1 for guidance and assistance on defendant's desire to travel to the Middle East to fight for ISIL.

On February 19, 2015, a confidential law enforcement source introduced Jonas Edmonds to UC2. Jonas Edmonds believed UC2 to be an individual who could assist Jonas Edmonds and defendant with their intention of traveling from the United States to support ISIL, but UC2 was in fact an undercover FBI employee.

On March 3, 2015, Jonas Edmonds and UC2 met in person. During the meeting, Jonas Edmonds informed UC2 that he was meeting on behalf of himself and defendant, and that he was looking to assist defendant's travel to the Middle East. The two discussed the best and safest route for defendant to take.

Following the March 3, 2015, meeting, Jonas Edmonds and UC2 engaged in a series of online communications concerning defendant's travel. Jonas Edmonds, in an attempt to facilitate defendant's travel to fight for ISIL, asked UC2 for a point of contact to assist defendant when he arrived in the Middle East.

On March 11, 2015, defendant told UC1 that he had purchased a plane ticket to Cairo, Egypt, in order to fight for ISIL. On March 23, 2015, UC2 met

4

with defendant and Jonas Edmonds in Aurora, Illinois. During this meeting, defendant informed UC2 that he had been watching videos from "brothers from the State," referring to members of ISIL, and that he did not want peace but instead wanted fighting. Jonas Edmonds expressed his support and excitement for defendant's travel, and said that he believed that one who supported a mujahid (a fighter) was a mujahid.

During the March 23, 2015, meeting, Jonas Edmonds informed UC2 that, after defendant traveled, he was planning to attack the Army National Guard installation to which defendant was assigned. Jonas Edmonds advised that he wanted to conduct the attack along with UC2 and that he anticipated a "body count" of 100 to 150 individuals. Defendant offered to provide Jonas Edmonds and UC2 with a list of the "rankings" of officers for Jonas Edmonds to kill. Defendant also confirmed that he would provide Jonas Edmonds with defendant's military uniforms for Jonas Edmonds to wear during the attack on the National Guard base.

On March 24, 2015, Jonas Edmonds and defendant, along with UC2, drove to defendant's National Guard base in Joilet, Illinois, for the purpose of conducting surveillance and planning for the attack. During the drive, Jonas Edmonds and defendant discussed with UC2 the purchasing of weapons and how to conduct an attack. Upon arrival, the three also discussed, among other things, where the National Guard members conducted their training.

Defendant described the inside of the installation and which rooms they should avoid during the attack. In furtherance of the plan to commit the attack, and to determine the timing of the attack, defendant entered the National Guard installation and retrieved a unit training schedule, which he then gave to Jonas Edmonds for the purpose of deciding upon a date to conduct their planned attack.

On March 25, 2015, Jonas Edmonds drove defendant to Chicago Midway Airport so that defendant could travel to the Middle East to fight for ISIL. After he dropped off defendant at Midway, Jonas Edmonds went to defendant's residence and retrieved several of defendant's National Guard uniforms, which Jonas Edmonds planned to use as a disguise during the planned attack at the National Guard base.

At the time defendant engaged in the conduct set forth above, he knew that ISIL was a designated foreign terrorist organization and that the organization had engaged in terrorist activity in Syria and Iraq.

   b.  With respect to Count Two of the superseding information:

On or about March 25, 2015, at Chicago, in the Northern District of Illinois, and elsewhere, defendant knowingly attempted to provide material support and resources, namely, personnel, to a foreign terrorist organization, namely, the Islamic State of Iraq and the Levant, commonly referred to as ISIL, ISIS, or the Islamic State, knowing that it was a designated foreign

terrorist organization and that the organization had engaged and was engaging in terrorist activity and terrorism.

Specifically, as described more fully in the factual basis for Count One, on March 25, 2015, defendant went to Chicago Midway Airport for the purpose of traveling to the Middle East to fight for ISIL.

### Maximum Statutory Penalties

7.    Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.    Count One carries a maximum sentence of 15 years' imprisonment. Count One also carries a maximum fine of $250,000. Defendant further understands that with respect to Count One the judge also may impose a term of supervised release of any term of years, including life.

b.    Count Two carries a maximum sentence of 15 years' imprisonment. Count Two also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Two the judge also may impose a term of supervised release of any term of years, including life.

c.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed.

d.    Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 30 years' imprisonment. In addition,

defendant is subject to a total maximum fine of $500,000, a period of supervised release, and special assessments totaling $200.

### Sentencing Guidelines Calculations

8. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2015 Guidelines Manual.

b. **Offense Level Calculations**.

i. <u>Count One</u>:

(A) The base offense level is 26, pursuant to Guideline § 2M5.3(a).

(B) The offense level is increased by two levels because the offense involved the provision of material support with the

8

intent, knowledge, or reason to believe that the support was to be used to commit or assist in the commission of a violent act, pursuant to Guideline § 2M5.3(b)(1)(E).

 (C) The offense level is increased by 12 levels, pursuant to Guideline § 3A1.4(a), because the offense is a felony that involved a federal crime of terrorism as defined in Title 18, United States Code, Section 2332b(g)(5), namely, the offense: (1) was calculated to influence or affect the conduct of government by intimidation and coercion, and to retaliate against government conduct; and (2) was a violation of Title 18, United States Code, Section 2339B.

 (D) The offense level is increased by three levels, pursuant to Guideline § 3A1.2, because the intended victims of the offense conduct included, among others, government officers and employees, and the offense of conviction was motivated by such status.

 (E) The adjusted offense level for Count One is 43.

 ii. Count Two:

 (A) The base offense level is 26, pursuant to Guideline § 2M5.3(a).

 (B) The offense level is increased by two levels because the offense involved the provision of material support with the intent, knowledge, or reason to believe that the support was to be used to

9

commit or assist in the commission of a violent act, pursuant to Guideline § 2M5.3(b)(1)(E).

        (C)    The offense level is increased by 12 levels, pursuant to Guideline § 3A1.4(a), because the offense is a felony that involved a federal crime of terrorism as defined in Title 18, United States Code, Section 2332b(g)(5), namely, the offense: (1) was calculated to influence or affect the conduct of government by intimidation and coercion, and to retaliate against government conduct; and (2) was a violation of Title 18, United States Code, Section 2339B.

        (D)    The adjusted offense level for Count Two is 40.

        iii.    <u>Grouping</u>:

Pursuant to Guideline §§ 3D1.1 and 3D1.2, Counts One and Two are grouped. Therefore, pursuant to Guideline § 3D1.4, defendant receives no increase in the offense level, which results in a combined offense level of 43.

iv.    <u>Acceptance of Responsibility</u>:

(A)    If the Court determines at the time of sentencing that defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level will be appropriate. The government reserves the right to take whatever position it deems appropriate at the time of sentencing with respect to whether defendant has accepted responsibility within the meaning of Guideline § 3E1.1(a).

(B)    If the Court determines that defendant has fully accepted responsibility within the meaning of Guideline § 3E1.1(a), and that the offense level is 16 or higher prior to the application of any reduction for acceptance of responsibility pursuant to § 3E1.1(a), the government will move for an additional one-level reduction in the offense level pursuant to Guideline § 3E1.1(b) because defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

11

c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero. Pursuant to Guideline § 3A1.4(b), defendant's criminal history category is VI.

d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, if the Court finds that Guideline §§ 3E1.1(a) and (b) apply, the anticipated offense level is 40, which, when combined with the anticipated criminal history category of VI, pursuant to Guideline § 5G1.1(a), results in an anticipated advisory sentence of 360 months' imprisonment, in addition to any supervised release and fine the Court may impose.

e.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation.

Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11.     Each party is free to recommend whatever sentence it deems appropriate.

12.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing

recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the indictment as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

15. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 15 CR 149.

16. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local

prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

17.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    **Right to be charged by indictment**. Defendant understands that he has a right to have the charges prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

b.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding information separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence

16

against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c.     **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his

conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

18.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

19.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

20.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

21.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's

request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

22. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

23. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

24. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

25. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or

require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

26. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

27. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

28.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____12/14/15_____


_____          _____
ZACHARY T. FARDON    BY C.K.U.          HASAN R. EDMONDS
United States Attorney                  Defendant

_____          _____
BARRY JONAS                             PAUL FLYNN
Assistant U.S. Attorney                 Attorney for Defendant

_____
JOHN KNESS
Assistant U.S. Attorney