```
 1                    IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
 2                           EASTERN DIVISION

 3   UNITED STATES OF AMERICA,        )  Docket No. 15 CR 149-1
                                      )
 4                   Plaintiff,       )
                                      )
 5            v.                      )  Chicago, Illinois
                                      )  December 14, 2015
 6   HASAN R. EDMONDS,                )  11:00 o'clock a.m.
                                      )
 7                   Defendant.       )

 8            TRANSCRIPT OF PROCEEDINGS - CHANGE OF PLEA
               BEFORE THE HONORABLE JOHN Z. LEE
 9
     APPEARANCES:
10
     For the Government:            HON. ZACHARY T. FARDON
11                                  United States Attorney, by
                                    MR. JOHN F. KNESS
12                                  MR. BARRY JONAS
                                    Assistant United States Attorneys
13                                  219 South Dearborn Street
                                    Chicago, Illinois 60604
14
     For the Defendant:            FEDERAL DEFENDER PROGRAM, by
15                                  MR. PAUL FLYNN
                                    55 East Monroe Street
16                                  Suite 2800
                                    Chicago, Illinois 60603
17

18

19

20                        ALEXANDRA ROTH, CSR, RPR
                           Official Court Reporter
21                        219 South Dearborn Street
                                   Room 1224
22                         Chicago, Illinois 60604
                                (312) 408-5038
23

24

25
```

1  (Proceedings had in open court:)

2    THE CLERK:  15 CR 149, USA versus Hasan Edmonds, for

3 change of plea.

4    MR. KNESS:  Good morning, your Honor.  John Kness,

5 K-n-e-s-s, and Barry Jonas on behalf of the United States.

6    MR. FLYNN:  Good morning, your Honor.  Paul Flynn

7 appears on behalf of Hasan Edmonds, who also appears.

8    THE COURT:  Good morning, everyone.  Good morning, Mr.

9 Edmonds.

10    We are here for an arraignment with regard to the

11 superseding information as well as change of plea hearing in

12 this case.  I understand, Mr. Flynn, that upon arraignment

13 Mr. Edmonds wishes to change his plea and enter a plea of

14 guilty as to Counts 1 and 2 of the superseding information, is

15 that correct?

16    MR. FLYNN:  That's correct, your Honor.

17    THE COURT:  Mr. Edmonds, before we proceed further,

18 I'm going to ask my courtroom deputy, Ms. Acevedo, to swear you

19 in.

20  (Defendant duly affirmed.)

21    THE COURT:  Mr. Edmonds, do you understand that you

22 are now under oath, and if you answer any of my questions

23 falsely, your answers may later be used against you in a

24 prosecution for perjury, or making a false statement?

25    THE DEFENDANT:  I do.

1    THE COURT:  Now, Mr. Flynn, you have been appointed to

2  represent Mr. Edmonds for this case, is that correct?

3    MR. FLYNN:  That's correct, Judge.

4    THE COURT:  Mr. Edmonds, I just wanted to confirm that

5  Mr. Flynn has been your attorney in connection with this case

6  since the beginning, is that correct?

7    THE DEFENDANT:  Yes, it is.

8    THE COURT:  If at any point in time this morning you

9  wish to take a break so you can speak privately with Mr. Flynn,

10  please let me know, and I will accommodate that request.  Do

11  you understand?

12    THE DEFENDANT:  Yes.

13    THE COURT:  Okay.  Before we continue, I want to

14  inform you that you have the right not to make any statements

15  today that would incriminate you.  However, if you wish to

16  plead guilty to those counts, you must answer my questions.

17  And in giving truthful responses to my questions or making

18  other statements during these proceedings, you will be giving

19  up your right not to testify against yourself.  And your

20  statements, or some of them, will be incriminating.

21    Do you understand that?

22    THE DEFENDANT:  Yes.

23    THE COURT:  Do you wish to proceed?

24    THE DEFENDANT:  Yes.

25    THE COURT:  One of the things that I have to do today

1    is to determine whether you are competent; that is, I need to

2    make sure that you understand the nature of today's proceeding.

3    In order to do so I will ask you some questions.

4              First of all, can you please state your full name for

5    the record.

6              THE DEFENDANT:  Hasan Rasheed Edmonds.

7              THE COURT:  Mr. Edmonds, are you a United States

8    citizen?

9              THE DEFENDANT:  Yes.

10             THE COURT:  How old are you, sir?

11             THE DEFENDANT:  Twenty-three.

12             THE COURT:  How far did you progress in school?

13             THE DEFENDANT:  Freshman year of college.

14             THE COURT:  Did you graduate from high school?

15             THE DEFENDANT:  Yes.

16             THE COURT:  And in college, what were you studying?

17             THE DEFENDANT:  Business administration.

18             THE COURT:  What type of work, if any, have you been

19   doing over the past three or four years?

20             THE DEFENDANT:  Mostly security.

21             THE COURT:  And when you say, security, what do you

22   mean?

23             THE DEFENDANT:  Working for Securitas.

24             THE COURT:  Is that a security firm?

25             THE DEFENDANT:  Yes.

1        THE COURT:  Are you currently under the care of a

2  physician or doctor for any sort of illness?

3        THE DEFENDANT:  No.

4        THE COURT:  Are you currently under the influence of

5  any sort of prescription medication, drug or alcoholic beverage

6  of any kind?

7        THE DEFENDANT:  No.

8        THE COURT:  Do you understand, Mr. Edmonds, that the

9  purpose of today's hearing is to conduct an arraignment with

10  respect to the superseding information and to allow you to

11  change your plea of not guilty to guilty?

12        THE DEFENDANT:  Yes.

13        THE COURT:  Mr. Flynn, do you have any reason to

14  question Mr. Edmonds' competency for the purpose of today's

15  hearing?

16        MR. FLYNN:  I do not.

17        THE COURT:  Does the government have any reason to

18  question Mr. Edmonds' competency for purpose of today's

19  hearing?

20        MR. KNESS:  No, your Honor.

21        THE COURT:  In light of Mr. Edmonds' demeanor here

22  today and his responses to my questions and statements from

23  counsel, the Court finds that Mr. Edmonds is competent for the

24  purpose of today's hearing and to offer a plea of guilty with

25  regard to those counts.

1    Now, Mr. Edmonds, have you received and reviewed a
2 copy of the superseding information that's pending against you?
3    THE DEFENDANT:  Yes.
4    THE COURT:  You have the right to have the information
5 read out loud to you in court today.  Would you like me to read
6 the information out loud?  Or do you waive the reading of the
7 information?
8    THE DEFENDANT:  I'd like to waive that, your Honor.
9    THE COURT:  Mr. Flynn, is your client waiving the
10 reading?
11    MR. FLYNN:  That's correct.
12    THE COURT:  Okay.  Furthermore, Mr. Edmonds, I want to
13 inform you that you have the right to have the charges in the
14 superseding information prosecuted by an indictment, returned
15 by concurrence of 12 or more members of a grand jury consisting
16 of not less than 16 and not more than 23 members.  Under the
17 plea agreement, however, I see that you are waiving your right
18 to be prosecuted by indictment, and to assert at trial or on
19 appeal any defects or errors arising from the information, the
20 information process, or the fact that you are being prosecuted
21 by way of information and not by indictment.
22    Do you understand you are doing this?
23    THE DEFENDANT:  Yes.
24    THE COURT:  Is there a signed waiver of indictment?
25    MR. KNESS:  Yes, there is, your Honor.  May I tender

1   to your deputy please?

2          THE COURT:  Yes, you may approach.

3      (Document tendered.)

4          THE COURT:  Mr. Edmonds, I have just been handed by

5   the government a document entitled waiver of indictment.  There

6   is a signature line that appears there, and under it is the

7   name Hasan Edmonds.  And there is a signature that appears on

8   the signature line.

9          Is that your signature, sir?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Did you review the document before you

12  signed it?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Did you discuss the document with your

15  attorney, Mr. Flynn, before you signed it?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Is there anything about the document that

18  you don't understand as you stand here today?

19         THE DEFENDANT:  No.

20         THE COURT:  Did anyone force you to sign this document

21  in any way?

22         THE DEFENDANT:  No.

23         THE COURT:  Did you sign the document based upon your

24  own free will?

25         THE DEFENDANT:  Yes.

1    THE COURT:  All right.  Very well.  The Court will

2  enter the waiver of indictment.

3    Have you fully discussed the charges in the

4  information with your counsel?

5    THE DEFENDANT:  Yes.

6    THE COURT:  Have you had enough time to discuss the

7  case in general with Mr. Flynn?

8    THE DEFENDANT:  Yes.

9    THE COURT:  Are you satisfied with the representation

10  that you have been receiving from Mr. Flynn in this case?

11    THE DEFENDANT:  Yes.

12    THE COURT:  In addition to finding that you are

13  competent and making sure that you have had the assistance of

14  an attorney in this case, I must make a number of other

15  determinations before I accept your plea of guilty.  I have to

16  determine that you understand that you will be waiving your

17  trial rights by pleading guilty.  I have to determine that you

18  understand the nature of the charges that are pending against

19  you and the potential maximum penalties for those charges.  I

20  must make sure that your plea is a voluntary act on your part,

21  and that there is sufficient independent factual basis for your

22  plea.

23    So let's go through those one at a time.  I want to

24  make sure that you understand your rights to a trial.  Do you

25  understand, Mr. Edmonds, that you have the right to plead not

1  guilty to any offense that's charged against you and to persist

2  in that plea?

3        THE DEFENDANT:  Yes.

4        THE COURT:  Do you understand that at a trial, you

5  would be presumed to be innocent, and the government would have

6  to prove your guilt beyond a reasonable doubt?

7        THE DEFENDANT:  Yes.

8        THE COURT:  Do you understand that you have the right

9  to the assistance of counsel for your defense, appointed by the

10  Court if necessary, at the trial and for every other stage of

11  the proceedings?

12        THE DEFENDANT:  Yes.

13        THE COURT:  Do you understand that at a trial you have

14  the right to see and hear all the witnesses and have them

15  cross-examined in your defense?

16        THE DEFENDANT:  Yes.

17        THE COURT:  Do you understand that at a trial you have

18  the absolute right on your own part to decline to testify,

19  unless you voluntarily elected to do so in your own defense?

20        THE DEFENDANT:  Yes.

21        THE COURT:  Do you understand that if you decline to

22  testify at trial, I would instruct the jury not to draw any

23  inference or suggestion of guilt from your decision not to

24  testify?

25        THE DEFENDANT:  Yes.

1    THE COURT:  Do you understand that at a trial you have

2  the right to compel the attendance of witnesses to testify on

3  your behalf?

4    THE DEFENDANT:  Yes.

5    THE COURT:  Now, your trial can proceed before a jury,

6  or your trial can proceed before a Judge in what we call a

7  bench trial.  But in order for your trial to be a bench trial,

8  both you and the government would have to agree to that

9  procedure.

10    Do you understand that?

11    THE DEFENDANT:  Yes.

12    THE COURT:  Do you understand that at a jury trial,

13  the jury would be composed of 12 individuals selected by a

14  process that you and your attorney could participate in?

15    Do you understand that?

16    THE DEFENDANT:  Yes.

17    THE COURT:  Now, let me explain that a little bit

18  further.  At a jury trial, you and your lawyer would have the

19  right to exclude a certain number of individuals from serving

20  on the jury for two basic reasons.  First of all, you and your

21  lawyer could challenge someone for cause, meaning that you do

22  not believe that that particular person could be a fair juror

23  in the case.

24    Second, you and your lawyer could exclude a number of

25  individuals by using a peremptory challenge, meaning you could

1    exclude a certain number of potential jurors for any reason
2    whatsoever.
3              Do you understand those procedures?
4              THE DEFENDANT:  Yes.
5              THE COURT:  Do you understand that at a trial, once a
6    jury was selected and heard the evidence and the arguments, in
7    order to arrive at a verdict, the jury would have to arrive at
8    a verdict unanimously?
9              Do you understand that?
10             THE DEFENDANT:  Yes.
11             THE COURT:  Do you understand that if this case were
12   to proceed to trial, you would have the right to appeal from
13   any legal errors committed during the trial?
14             THE DEFENDANT:  Yes.
15             THE COURT:  Have you discussed your trial rights with
16   your attorney, Mr. Flynn?
17             THE DEFENDANT:  Yes.
18             THE COURT:  Do you understand that by entering a plea
19   of guilty and if that plea is accepted by me, there will be no
20   trial and you will have waived, or in other words given up,
21   your right to a trial as well as all of those other rights that
22   we just discussed?
23             THE DEFENDANT:  Yes.
24             THE COURT:  If you plead guilty and your plea is
25   accepted, I will be entering a finding of guilt today without a

1    trial.

2              Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Now, with regard to appellate rights, as

5    part of your plea agreement, Mr. Edmonds, you have waived your

6    right to appeal any issues that might have been available to

7    you had you exercised your right to a trial.

8              Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Also as part of the plea agreement, you

11   have waived your right to appeal your conviction or any

12   pretrial rulings by the Court and any part of the sentence,

13   including the manner in which it was determined, including any

14   term of imprisonment and fine within the maximum provided by

15   statute.

16             Do you understand that?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Furthermore, you're agreeing to waive your

19   right to challenge your conviction and the sentence and the

20   manner in which the sentence was determined in any collateral

21   attack or future proceeding, including but not limited to a

22   motion brought under 28 USC Section 2255.

23             Do you understand that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  I do want to inform you, Mr. Edmonds, that

1    your waiver of appellate rights does not apply to a claim of

2    involuntariness or ineffective assistance of counsel which

3    related directly to the waiver or its negotiation.  Nor are you

4    prohibited from seeking a reduction in sentence based directly

5    on a change in the law that is applicable to you, and that

6    prior to the filing of any request for relief has been

7    expressly made retroactive by an act of Congress, the Supreme

8    Court, or the United States Sentencing Commission.

9            Other than those limited issues, by pleading guilty

10   you are waiving all rights to appeal in connection with this

11   matter as I just discussed.

12           Do you understand you are doing this?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Now, I understand that defendant has

15   entered into a plea agreement, is that correct, Mr. Flynn?

16           MR. FLYNN:  That's correct, your Honor.

17       (Document tendered.)

18           THE COURT:  Now, Mr. Edmonds, I have been handed a

19   plea agreement in this case.  It's a 22-page document.  And on

20   the 22nd page there are various signature lines, including one

21   for Hasan Edmonds and one for Paul Flynn, as well as signatures

22   by counsel for the government.

23           The signature that appears above the line, Hasan

24   Edmonds, is that your signature, sir?

25           THE DEFENDANT:  Yes.

1        THE COURT:  And the signature that appears above Paul

2   Flynn, that's the signature of your attorney, is that correct?

3        THE DEFENDANT:  Yes.

4        THE COURT:  Did you read the document before you

5   signed it?

6        THE DEFENDANT:  Yes.

7        THE COURT:  Did you discuss the contents of the

8   document with your attorney before you signed it?

9        THE DEFENDANT:  Yes.

10       THE COURT:  Is there anything about this document that

11  you do not understand as you stand here today?

12       THE DEFENDANT:  No.

13       THE COURT:  Has anyone threatened you or pressured you

14  in any way to sign this document?

15       THE DEFENDANT:  No.

16       THE COURT:  Did anyone make any promises to you other

17  than those set forth in the document to induce you to sign the

18  document?

19       THE DEFENDANT:  No.

20       THE COURT:  Do you understand, Mr. Edmonds, that under

21  this plea agreement you are agreeing to plead guilty as to

22  Count 1 and 2 of the superseding information?

23       THE DEFENDANT:  Yes.

24       THE COURT:  Did you sign this plea agreement

25  voluntarily and completely based upon your own free will?

1      THE DEFENDANT:  Yes.

2      THE COURT:  I want to make sure that you understand

3  the potential consequences of the guilty plea as well as the

4  maximum statutory penalties with regard to Counts 1 and 2 of

5  the superseding information.

6      Will the government please inform Mr. Edmonds of the

7  maximum penalties in this case?

8      MR. KNESS:  Yes, your Honor.  Count 1 carries a

9  maximum potential sentence of 15 years of imprisonment.  It

10  carries no mandatory minimum fine.  There is a maximum

11  potential fine of $250,000.  And with respect to supervised

12  release, as to Count 1, your Honor, you may impose a term of

13  supervised release of any term of years including up to the

14  rest of the defendant's life.

15      For Count 2, that count also carries a maximum

16  sentence of 15 years of imprisonment, a maximum fine of up to

17  $250,000, and also a term of supervised release of any number

18  of years including up to the rest of the defendant's life.

19      THE COURT:  Mr. Edmonds, let me go through those with

20  you.  Do you understand that Count 1 carries a maximum sentence

21  of 15 years of imprisonment, a maximum term of supervised

22  release of any years up to life, and a maximum fine of

23  $250,000?

24      THE DEFENDANT:  Yes.

25      THE COURT:  Do you understand that Count 2 carries a

1   maximum sentence of 15 years of imprisonment, a maximum term of

2   supervised release of three years, and a maximum fine of

3   $250,000?

4           THE DEFENDANT:  Yes.

5           MR. KNESS:  Your Honor, did you say three years for

6   Count 2 on supervised release?

7           THE COURT:  I did.  What is the maximum supervised

8   release for Count 2?

9           MR. KNESS:  Up to any number of years including the

10  rest of the defendant's life.  And I also forgot to add, your

11  Honor, that there is a $100 special assessment on each count.

12          THE COURT:  So, Mr. Edmonds, let me correct myself and

13  make sure that you understand that with respect to Count 2,

14  Count 2 carries a maximum sentence of 15 years of imprisonment,

15  a maximum term of supervised release of any years up to life,

16  as well as a maximum fine of $250,000.

17          Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Okay.  Furthermore, as a result of your

20  plea of guilty, a special assessment of $100 must be imposed

21  for each count.  And you must pay this amount at the time of

22  sentencing.

23          Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Accordingly, with regard to both counts,

1     the total maximum term of imprisonment is 30 years.  The

2     maximum fine is $500,000.  And the maximum period of supervised

3     release is any term of years up to life.  And special

4     assessments totaling $200.

5              Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Furthermore, if the Court accepts your

8     plea of guilty, you will be adjudged guilty of a felony.  And

9     such adjudication of guilt may deprive you of valuable civil

10    rights, such as the right to vote, the right to hold public

11    office, the right to serve on a jury, and the right to possess

12    firearms.

13             Do you understand that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you understand that the superseding

16    information and the plea agreement will be a matter of public

17    record and will be available to anyone in the public that

18    wishes to see it?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Let me talk to you briefly about

21    sentencing.  If you plead guilty and your plea is accepted,

22    your sentence will be determined by me after consideration of

23    the advisory sentencing guidelines and other statutory

24    sentencing factors.  Have you and your attorney talked about

25    how those advisory sentencing guidelines might apply to your

1    case?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Do you understand that the provisions in

4    the plea declaration, or the plea agreement rather, discussing

5    the advisory sentencing guideline range are preliminary in

6    nature only, and they are not binding upon the Court?  In other

7    words, I do not have to follow them.

8              Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you understand that I can reject the

11   position set forth in the plea agreement without allowing you

12   to withdraw your plea of guilty?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Do you understand that I can impose a

15   sentence that is more severe than what you might anticipate

16   based upon your discussions with your lawyer or any

17   understanding that you may have with regard to the advisory

18   sentencing guideline range?

19             Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Do you understand that I will not be able

22   to determine the advisory guideline range for your case or what

23   the appropriate sentence should be until after a presentence

24   report has been prepared?

25             THE DEFENDANT:  Yes.

1    THE COURT:  Now, I do want to inform you that you and

2  your attorney and the government will have an opportunity to

3  review the presentence investigation report and challenge any

4  of the reported factual findings in the report as well as the

5  application of the advisory sentencing guidelines recommended

6  in the report.

7    But most importantly, do you understand that the

8  sentence ultimately imposed may be different from any estimate

9  or prediction that may have been given to you and different

10  from the calculations that are contained in your plea

11  agreement?

12    Do you understand that?

13    THE DEFENDANT:  Yes.

14    THE COURT:  The final decision of what your sentence

15  will be rests with me.  And I might sentence you to a longer

16  period or shorter period than what you might expect.  But you

17  still would be bound by your plea of guilty, and you will have

18  no right to withdraw your plea.

19    Do you understand that?

20    THE DEFENDANT:  Yes.

21    THE COURT:  I will now proceed to determine whether

22  there is an independent factual basis for the guilty plea.  Now

23  Mr. Edmonds, I'm going to ask the government to please

24  summarize the factual evidence that the government intends to

25  present at trial if this case were to go to trial.  I want you

1    to listen very carefully to what the government has to say.

2    And afterwards I will ask you whether you agree that the

3    factual statements made by the government are true.

4                Do you understand?

5                THE DEFENDANT:  Yes.

6                THE COURT:  Please proceed.

7                MR. KNESS:  Thank you, your Honor.

8                If this case proceeded to trial, the evidence with

9    respect to Count 1 of the superseding information would show

10   beyond a reasonable doubt that beginning no later than in or

11   about December 2014, and continuing until at least on or about

12   March 25, 2015, at Aurora in the Northern District of Illinois

13   and elsewhere, the defendant and co-defendant Jonas Edmonds

14   knowingly conspired with each other to provide material support

15   and resources, namely personnel, to a foreign terrorist

16   organization, namely the Islamic State of Iraq and Levant,

17   commonly referred to as ISIL, ISIS or the Islamic State,

18   knowing that it was a designated foreign terrorist

19   organization; and that the organization had engaged and was

20   engaging in terrorist activity and terrorism.

21               More specifically, your Honor, beginning on or about

22   January 19, 2015, and continuing thereafter, the defendant, a

23   member of the Army National Guard of Illinois, assigned to a

24   National Guard unit in the Northern District of Illinois,

25   engaged in online communications with UC1, a person whom the

1    defendant believed was an ISIL fighter in Libya but who in fact

2    was an FBI employee.

3         In those communications the defendant expressed his

4    support for ISIL and his desire to travel to the Middle East

5    with his cousin, Jonas Edmonds, to fight for ISIL.  The

6    defendant also gave UC1 advice on how to fight and defeat the

7    U.S. military, and stated that he and Jonas Edmonds were

8    willing to conduct an attack in the United States if ordered to

9    do so.

10         On February 6, 2015, Jonas Edmonds contacted UC1

11    online and said that he was planning to travel with his family

12    to Mosul, an area of Iraq controlled by ISIL.  Jonas Edmonds

13    also told UC1 that if he was unable to travel, he intended to

14    commit an attack within the United States in support of ISIL.

15    Over the next month Jonas Edmonds asked UC1 for guidance and

16    assistance on the defendant's desire to travel to the Middle

17    East to fight for ISIL.

18         On February 19, 2015, a confidential law enforcement

19    source introduced Jonas Edmonds to UC2.  Jonas Edmonds believed

20    UC2 to be an individual who could assist Jonas Edmonds and

21    defendant with their intention of traveling from the United

22    States to support ISIL.  But UC2 was in fact an undercover FBI

23    employee.

24         On March 3, 2015, Jonas Edmonds and UC2 met in person.

25    During the meeting Jonas Edmonds informed UC2 that he was

1   meeting on behalf of himself and the defendant, and that he was

2   looking to assist the defendant's travel to the Middle East.

3   The two discussed the best and safest route for defendant to

4   take.

5          Following the March 3, 2015 meeting, Jonas Edmonds and

6   UC2 engaged in a series of online communications concerning the

7   defendant's travel.  Jonas Edmonds in an attempt to facilitate

8   the defendant's travel to fight for ISIL, asked UC2 for a point

9   of contact to assist defendant when he arrived in the Middle

10  East.

11         On March 11, 2015, the defendant told UC1 that he had

12  purchased a plane ticket to Cairo, Egypt, in order to fight for

13  ISIL.

14         On March 23, 2015, UC2 met with the defendant and

15  Jonas Edmonds in Aurora, Illinois.  During this meeting, the

16  defendant informed UC2 that he had been watching videos from,

17  quote, brothers from the State, close quote, referring to

18  members of ISIL; and that he did not want peace but instead

19  wanted fighting.  Jonas Edmonds expressed his support and

20  excitement for the defendant's travel and said that he believed

21  that one who supported a mujahid, a fighter, was a mujahid.

22         During the March 23, 2015 meeting, Jonas Edmonds

23  informed UC2 that after the defendant traveled he was planning

24  to attack the Army National Guard installation to which the

25  defendant was assigned.  Jonas Edmonds advised that he wanted

1    to conduct the attack along with UC2 and that he anticipated a,

2    quote, body count, close quote, of 100 to 150 individuals.

3           Defendant offered to provide Jonas Edmonds and UC2

4    with a list of a, quote, rankings, close quote, of officers for

5    Jonas Edmonds to killed.  The defendant also confirmed that he

6    would provide Jonas Edmonds with the defendant's military

7    uniforms for Jonas Edmonds to wear during the attack on the

8    National Guard base.

9           On March 24, 2015, Jonas Edmonds and the defendant

10   along with UC2 drove to the defendant's National Guard base in

11   Joliet, Illinois, for the purpose of conducting surveillance

12   and plan for the attack.  During the drive, Jonas Edmonds and

13   the defendant discussed with UC2 the purchasing of weapons and

14   how to conduct an attack.

15          Upon arrival, the three also discussed among other

16   things where the National Guard members conducted their

17   training.  The defendant described the inside of the

18   installation and which rooms they should avoid during the

19   attack.  In furtherance of the plan to commit the attack and to

20   determine the timing of the attack, the defendant entered the

21   National Guard installation and retrieved a unit training

22   schedule, which he then gave to Jonas Edmonds for the purpose

23   of deciding upon a date to conduct their planned attack.

24          On March 25, 2015, Jonas Edmonds drove the defendant

25   to Chicago Midway Airport so that the defendant could travel to

1    the Middle East to fight for ISIL.  After he dropped off the

2    defendant at Midway, Jonas Edmonds went to the defendant's

3    residence and retrieved several of the defendant's National

4    Guard uniforms, which Jonas Edmonds planned to use as a

5    disguise during the planned attack at the National Guard base.

6          Your Honor, at the time the defendant engaged in the

7    conduct set forth above, he knew that ISIL was a designated

8    foreign terrorist organization and that the organization had

9    engaged in terrorist activity in Syria and Iraq.  Your Honor,

10   that would be the government's evidence with respect to

11   Count 1.

12         With respect to Count 2 of the superseding

13   information, the evidence would show beyond a reasonable doubt

14   that on or about March 25, 2015, at Chicago in the Northern

15   District of Illinois and elsewhere, the defendant knowingly

16   attempted to provide material support and resources, namely

17   personnel, to a foreign terrorist organization, namely the

18   Islamic State of Iraq and the Levant, commonly referred to as

19   ISIL, ISIS or the Islamic State, knowing that it was a

20   designated foreign terrorist organization, and that the

21   organization had engaged and was engaging in terrorist activity

22   and terrorism.

23         Specifically as described more fully in the factual

24   basis for Count 1 that I just recited to your Honor, on March

25   25, 2015, the defendant went to Chicago's Midway Airport for

1    the purpose of traveling to the Middle East to fight for ISIL.

2             Your Honor, that would be the government's evidence at

3    trial with respect to Count 2.

4             THE COURT:  Mr. Edmonds, having heard the factual

5    evidence that the government intends to present at trial if

6    this case were to proceed to trial, do you agree that those

7    facts as stated by the government are true?

8             THE DEFENDANT:  Yes.

9             THE COURT:  Is it the government's position that Mr.

10   Edmonds' admission is sufficient to support a plea of guilty as

11   to Counts 1 and 2 of the superseding information?

12            MR. KNESS:  Yes, your Honor.

13            THE COURT:  I will now proceed to take the plea.  Mr.

14   Edmonds, how do you now plead as to Count 1 of the superseding

15   information?

16            THE DEFENDANT:  Guilty.

17            THE COURT:  How do you plead as to Count 2 of the

18   superseding information?

19            THE DEFENDANT:  Guilty.

20            THE COURT:  It is the finding of the Court that Mr.

21   Edmonds is fully competent and capable of entering an informed

22   plea, that he is aware of the nature of the charge and the

23   consequences of the plea, and that the plea of guilty is a

24   knowing and voluntary plea supported by independent basis in

25   fact containing each of the essential elements of the offenses.

1          Accordingly, the Court accepts Mr. Edmonds' plea of

2    guilty as to Count 1 and Count 2 of the superseding

3    information.

4          Mr. Edmonds, I will order a presentence investigation

5    report to assist the Court in sentencing.  You will be asked to

6    give information for that report, and your attorney may be

7    present if you wish.  You must be truthful and cooperate

8    completely with the probation officer in connection with the

9    preparation of that report.

10          Do you understand?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Ms. Acevedo, can you provide the parties

13    with a sentencing schedule.

14          THE CLERK:  Defendant's sentencing memorandum and

15    objections to the report are due March 4.  The government's

16    response, March 11.  Sentencing is set for March 18 at 11:00

17    o'clock in the morning.

18          In the event that the government is seeking an order

19    of forfeiture, a motion for entry of a preliminary order of

20    forfeiture should be filed by February 23.  And any objections

21    by March 4.

22          THE COURT:  Mr. Kness, anything else we need to

23    address today?

24          MR. KNESS:  No, your Honor.  Thank you.

25          THE COURT:  Mr. Flynn?

1    MR. FLYNN:  No, your Honor.  Just what time was the

2  sentencing set?

3    THE CLERK:  At 11:00 o'clock.

4    MR. FLYNN:  Thank you, your Honor.

5    THE COURT:  Thank you.  We are adjourned.

6    (Which were all the proceedings heard in this case.)

7                    CERTIFICATE

8    I HEREBY CERTIFY that the foregoing is a true, correct

9  and complete transcript of the proceedings had at the hearing

10  of the aforementioned cause on the day and date hereof.

11

12  /s/Alexandra Roth                        3/13/2017

13  _____     _____
    Official Court Reporter                    Date
    U.S. District Court
14  Northern District of Illinois
    Eastern Division

15

16

17

18

19

20

21

22

23

24

25